```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA


WIREROPE WORKS, INC.            : CIVIL ACTION
                                :
        vs.                     :
                                : NO. 07-CV-169
TRAVELERS EXCESS AND SURPLUS    :
LINES COMPANY                   :
```

### MEMORANDUM AND ORDER

**JOYNER, J.**                                                **May 12, 2008**

We write now to address the motion of Defendant, Travelers Excess and Surplus Lines Company for sanctions against Plaintiff Wirerope Works, Inc. pursuant to Fed.R.Civ.P. 37(b)(Docket No. 45-5). On February 4, 2008, Plaintiff was ordered to show cause why it should not suffer sanctions in the form of an order precluding it from presenting any evidence in support of the claims in its Complaint as a sanction for violating several of this Court's Orders directing Plaintiff to answer interrogatories, produce documents and to cooperate in the discovery process. Plaintiff has now responded and the sanctions motion is ripe for disposition.

### History of the Case

This case has its origins in a fire which occurred on

December 15, 2004[1] at the Wirerope Works manufacturing facility located at 880 South Second Street in Sunbury, Pennsylvania. Although it was renting the property at the time of the fire[2], Wirerope Works had insured the premises through Travelers Excess and Surplus Lines Company (hereinafter "Travelers") under Policy No. KTQ-CMB-4692A42-8-04.  That policy was in effect from 3/31/04 through 3/31/05. (Pl's Complaint, ¶s5-6).  The plaintiff thereafter submitted a claim under the Travelers' policy for the damages which it sustained as a result of the fire and the claim was "settled with the exception of machinery and equipment permanently attached to the building, the value of the slab underneath the attached premises, Travelers Excess liability for ordinance or law coverage and possibly other business personal property."  (Complaint, ¶7).

Following a Rule 16 conference with the parties, this Court

---

[1] The plaintiff alleges in its complaint that the fire occurred on December 15, 2005.  However, the defendant's Answer denies this allegation and avers that the fire took place on December 15, 2004.  In as much as Travelers is not disputing that the subject policy was in effect on the date of the fire and the policy was effective between March 31, 2004 and March 31, 2005, we assume that the correct occurrence date was December 15, 2004.

[2] Although Plaintiff's complaint also avers that "at all relevant times herein, it was the real and registered owner of the premises 880 S. 2nd Street, Sunbury, PA 17801-3305...," at the conferences with the undersigned and in a motion to amend filed on January 12, 2008, Plaintiff's counsel acknowledged that the plaintiff was instead only the lessee of those premises. As we observed in our Order of February 4, 2008 denying the plaintiff's motion therefor, we denied leave to amend for the reasons that the ownership issue should have been clearly apparent to the plaintiff when the defendant filed its answer in March 2007 denying Plaintiff's ownership and instead averring that the plaintiff had only a leasehold interest in the property and because the plaintiff was again trying to assert entirely new causes of action well after the close of discovery to the prejudice of Defendant.

entered a Scheduling Order on May 16, 2007 providing, in relevant part, that all discovery was to be completed by September 4, 2007, all summary judgment motions were to be filed by October 9, 2007 and the case was to be placed in the trial pool on November 9, 2007.  A short time later on July 2, 2007, the defendant filed its first motion to compel discovery from the plaintiff.  The plaintiff filed a response to the motion and, as it appeared that the parties may have been working the matter out between them, the Court did not immediately rule on the motion but instead granted a 30-day extension from the Scheduling Order deadlines. These cooperative efforts eventually broke down with the result that the plaintiff filed, on September 19, 2007, its first motion to compel discovery which was closely followed by the plaintiff's filing of several motions for partial summary judgment - one motion for each of its unsettled claims.  This Court conducted an in-chambers status conference to address the outstanding discovery matters and thereafter issued two orders on September 26, 2007 denying as moot the plaintiff's motions to compel discovery from the defendant and granting the defendant's motion to compel Plaintiff to provide answers to Defendant's First Set of Interrogatories and First Request for Production of Documents and directing that Plaintiff submit to a second Rule 30(b)(6)

deposition.[3]  We further ordered another thirty-day extension of the Scheduling Order deadlines to enable the parties to complete discovery.[4]

Rather than complying with the Court's directive, however, on September 27th and October 2nd the plaintiff filed two motions to vacate the Court's September 26, 2007 Order directing it to submit to Rule 30(b)(6) deposition and to provide full and complete answers to the defendant's outstanding discovery and a third motion for protective order seeking essentially the same

---

[3] Indeed, it appeared clear to the Court at the conference that the defendant had sufficiently responded to the plaintiff's outstanding discovery requests whereas the plaintiff had not provided adequate answers or responses to the defendant's outstanding discovery.

[4] Indeed, it was unclear to the Court just what the plaintiff's theory(ies) of recovery were and what damages it was seeking.  The complaint alleges that Travelers had acted in bad faith in adjusting the claim and sought to hold Travelers liable for "...the costs of reconstruction of the insured premises increased by the application of law or ordinance," and to recover the "[c]osts of this action and such other costs as are permitted by law," "[p]unitive damages as provided by 42 Pa.C.S. §8371," "[a]n assessment of attorney's fees by the court pursuant to 42 Pa.C.S. §8371,..." and "such other relief which WIREROPE may hereafter request or which may otherwise be due and owing under the circumstances..."  Pl's Complaint, ¶9.  At various times throughout the discovery process, as we have discerned through Plaintiff's interrogatory answers and during conferences with the parties, the plaintiff had indicated that it was seeking damages for, *inter alia*, the removal and replacement of the concrete slab underlying the building, the costs of removal and replacement of the equipment which may or may not have been permanently affixed to the property and/or the slab, and the costs to elevate the building which may or may not have been required by Sunbury's municipal ordinances.  Further confusion has been engendered by the generic manner in which Plaintiff and its counsel have referred to these various claims, *i.e.,* the "stock claim," the "replacement claim," the "code claim" and the "elevation claim," among others. It was in the futile hope that the parties would be able to truly discover what damages, if any, were in fact still due and owing under the policy that this Court permitted the time for discovery to be extended.  Instead, it now appears that the plaintiff has taken unfair advantage of these extensions to fabricate entirely new theories under which it might recover, while at the same time protesting the defendant's attempts to learn the bases upon which it is premising its new theories by asserting that it has already produced the witnesses and documents which purportedly evince them.

relief.  By Order dated October 15, 2007, all three of these motions were denied.[5]

Despite the denial of its motions, Wirerope did nothing to comply with the Court's September 24, 2007 directive that it provide full and complete answers to Travelers' First Set of Interrogatories and First Request for Production of Documents and to produce a Rule 30(b)(6) designee for deposition.  Instead, on January 17, 2008, Wirerope filed a motion to dismiss the defendant's motion for sanctions asserting as the reasons therefor first, that it did not have anyone competent to testify to the matters identified in the Rule 30(b)(6) Notice of Deposition.  Second, plaintiff submitted that because the subject matter of the deposition was to be, *inter alia*, "...the meaning and basis of the Replacement Cost Claim for $957,964 ... and Plaintiff's Law and Ordinance claim for $2,500,000 as set forth in Plaintiff's Sixth Set of Answers to Defendant's First Set of Interrogatories, No. 2...", and Plaintiff had now decided that it "did not have the present right to make claims for the replacement cost and law and ordinance costs and will only have such right if it rebuilds the building," the need for the outstanding discovery was now mooted because Wirerope was only now seeking declaratory relief and not a specific amount of

---

[5] And, at footnote 1 to that Order, this Court specifically warned Plaintiff's counsel that he would be sanctioned if he continued with his course of obstreperous conduct.

monetary damages.

On January 24, 2008, we held a hearing on the then-outstanding motions[6] and in an effort to ascertain just what was going on with this case. Interestingly, at the hearing Plaintiff's counsel *then* represented the following with regard to what claims he was now pressing on behalf of his clients:

> "...we are down to I think matters of issues of law and the stock claim does involve an issue of fact, but we believe a partial admission as to the portion of the claim on which summary judgment can be entered, which is for $29,555, that we believe the record shows Travelers has admitted as being the portion of the stock claim that they determined on the building, actual cash value claim.
>
> We have two alternative claims, one for the balance of the ACV coverage, which is about 900 some thousand dollars, assuming that your Honor was to find that the machinery – the stranders and closers were permanently affixed. if your Honor does not, we would assert that the cranes which were in the building were permanently affixed, a claim for four hundred some thousand.
>
> I don't think there has been any disputed facts as to the underlying facts about the installation of this equipment. The question is whether or not under Pennsylvania law, either of these categories of equipment are deemed to be permanently affixed to the realty, for purposes of the insurance policy, so that we are entitled to judgment as a matter of law."

(N.T. 1/24/08, 2-3). In an Order dated February 4, 2008, we denied the plaintiff's motion to dismiss the defendant's cross-motion for sanctions and, in a separate order of that same date, directed Plaintiff and its counsel to show cause why they should not be sanctioned in the form of an order precluding them from

---

[6] By the Court's count there were 10 motions then outstanding.

presenting any evidence in support of the claims raised in their complaint.

## Discussion

By moving for sanctions for failure to comply with this court's orders granting discovery, the defendant has invoked Fed.R.Civ.P. 37(b)(2), which provides:

> **(b) Failure to Comply with a Court Order.**
>
> ....
>
> **(2) Sanctions in the District Where the Action Is Pending.**
>
>> (A) *For Not Obeying a Discovery Order.* If a party or a party's officer, director or managing agent - or a witness designated under Rule 31(a)(4) - fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
>>
>> **(i)** directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>>
>> **(ii)** prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>>
>> **(iii)** striking pleadings in whole or in part;
>>
>> **(iv)** staying further proceedings until the order is obeyed;
>>
>> **(v)** dismissing the action or proceeding in whole or in part;
>>
>> **(vi)** rendering a default judgment against the

>     disobedient party; or
>
>     **(vii)** treating as contempt of court the failure to obey an order except an order to submit to a physical or mental examination.
>
>     **(B)** *For Not Producing a Person for Examination.* If a party fails to comply with an order under Rule 35(a) requiring it to produce another person for examination, the court may issue any of the orders listed in Rule 37(b)(2)(A)(i)-(vi), unless the disobedient party shows that it cannot produce the other person.
>
>     **(C)** *Payment of Expenses.*  Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

The decision to impose sanctions for discovery violations and any determination as to what sanctions are appropriate are matters generally entrusted to the discretion of the district court.  Bowers v. National Collegiate Athletic Association, 475 F.3d 524, 538 (3d Cir. 2007).  Thus, while the discretion to do so is clearly vested in the district courts, dismissal of a case is a harsh remedy that should be resorted to only in extreme cases.  Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d Cir. 1992).  In exercising this discretion, district court judges are to determine the propriety of punitive dismissals by carefully considering and balancing the following factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and

respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. Id.; Poulis v. State Farm Fire and Casualty Co., 747 F.2d 863, 868 (3d Cir. 1984). Although each factor need not be satisfied for the trial court to dismiss a claim, any and all doubts should be resolved in favor of reaching a decision on the merits. Ware v. Rodale Press, Inc., 322 F.3d 218, 221 (3d Cir. 2003), citing Hicks v. Feeney, 850 F.2d 152, 156 (3d Cir. 1988); Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir. 2002), citing Adams v. Trustees of the N.J. Brewery Employees' Pension Trust Fund, 29 F.3d 863, 870 (3d Cir. 1994). However, dismissal is appropriate where the plaintiff has caused undue delay or engaged in contumacious conduct. Pennar Software Corp. v. Fortune 500 Systems, Ltd., Civ. A. No. 1:02-CV-0413, 2006 U.S. Dist. LEXIS 57462 at *25 (M.D. Pa. Aug. 16, 2006) citing Guyer v. Beard, 907 F.2d 1424, 1429 (3d Cir. 1990).

In reviewing the record in the matter before us, we first find that while not unduly protracted, there is a history of delay and denial on the plaintiff's part in responding to the defendant's discovery which has clearly hampered Defendant in the preparation of its defense. To illustrate, in their responses

to the Order to show cause, both plaintiff and its counsel deny that they have provided incomplete answers to interrogatories, failed to produce relevant documents or that, with respect to the Rule 30(b)(6) deposition, they have failed to produce a witness competent to testify as to the meaning and bases of the "replacement cost claim" and/or the "law and ordinance claim" or "pure code claim."  Plaintiff and its counsel further deny that another Rule 30(b)(6) deposition is necessary because, *inter alia*: (1) the term "pure code claim" is a phrase of plaintiff's counsel's "own invention and nobody at Wirerope knew anything about it," (2) the people with knowledge related to these claims were not Wirerope employees and thus Wirerope had no obligation to produce them, and (3) the motion for sanctions is based upon what Plaintiff now characterizes as the "Third 30(b)(6) notice" which the Court should have rejected and which was not, according to the plaintiff, authorized by the Court.  Although the plaintiff's response is ostensibly signed by its Executive Vice President Virgil Probasco, it mirrors in many respects the response of Plaintiff's counsel and in fact appears to this Court to have been prepared by Plaintiff's counsel.

It further appears from the record of the protracted proceedings before us that the obstreperous and defiant conduct which has been exhibited throughout the duration of this matter has been virtually exclusively that of the plaintiff's attorney

alone and that these problems have in large part been engendered by the repeated re-formulations of plaintiff's counsel's ever-changing theories of his case. Thus, we conclude that the fault lies primarily with plaintiff's counsel and we cannot attribute the discovery delays and abuses to the plaintiff itself.

Interestingly, we are hard-pressed to find that Plaintiff's counsel acted wilfully or maliciously in taking the actions which he has or that his conduct has yet risen to the level of bad faith. Rather, it appears to this Court that Mr. Begier has perhaps failed to undertake the sufficient investigation into the facts and existing law that is a necessary pre-requisite to filing suit in the first place. See, e.g., Fed.R.Civ.P. 11(b). Indeed, it is precisely because of the absence of a more complete factual record that we are unable to discern whether or not the plaintiff's case has any merit.

Accordingly, while we believe that sanctions are appropriate in this case, we believe that they are properly imposed against only Plaintiff's counsel - not the plaintiff itself and that the sanction of outright dismissal or preclusion is too harsh. That having been said, it appears that the defendant has been caused to unnecessarily incur substantial costs, fees, travel and other expenses to have its attorneys, investigators and experts determine the scope and merits of claims which the plaintiff has now since abandoned. Specifically, it appears that the plaintiff

was at one time seeking to recover for damages to and/or the re-construction of the concrete slab, for elevating the reconstructed premises in accordance with still-unclear municipal ordinances and codes, and for effectuating the complete removal of equipment, among others.  The principal reason for granting the defendants' request for another Rule 30(b)(6) deposition was to enable Defendant to finally learn what the plaintiff's claims were and the bases for those claims.  We thus believe it fair and equitable to order that Plaintiff's attorney reimburse Defendant for all of the attorney's, investigator's and expert's fees, travel expenses and out-of-pocket costs which it has incurred in evaluating those claims which Plaintiff has since abandoned and to direct that Plaintiff's counsel pay all of the reasonable travel, transportation, meals, and lodging costs and expenses which Defense counsel expends in having to take the Rule 30(b)(6) deposition(s) of those witnesses identified by Plaintiff who are located in Dallas, Texas and Buffalo, New York.  See, Fed.R.Civ.P. 37(b)(2)(E).

## Conclusion

For the reasons set forth above, we find that sanctions are appropriate only as against the plaintiff's attorney.  As such, we shall grant the defendant's cross-motion for sanctions by ordering Mr. Begier to reimburse the Travelers Excess and Surplus Lines Company for the reasonable fees, costs, and out-of-pocket

expenses which it incurred in evaluating the numerous claims which Plaintiff has now abandoned.  In addition, Plaintiff's counsel is directed to pay all of the defendant's reasonable expenses in traveling to and from Philadelphia to Dallas, TX and/or Buffalo, NY to take the deposition of those individuals whom Plaintiff has identified as having the information sought by the defendant's Rule 30(b)(6) deposition notices.

An order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
WIREROPE WORKS, INC.              : CIVIL ACTION
                                  :
     vs.                          :
                                  : NO. 07-CV-169
TRAVELERS EXCESS AND SURPLUS      :
LINES COMPANY                     :
```

**ORDER**

AND NOW, this    12th    day of May, 2008, upon consideration of Defendant's Motion for Sanctions Against Plaintiff Pursuant to Fed.R.Civ.P. 37(b) (Docket No. 45) and Plaintiff's responses thereto, it is hereby ORDERED that the Motion is GRANTED and Sanctions are awarded in favor of Defendant and against Plaintiff's counsel, Harry P. Begier, Jr., Esquire as follows:

Mr. Begier is DIRECTED to reimburse the Travelers Excess and Surplus Lines Company for the reasonable fees, costs, and out-of-pocket expenses which it incurred in evaluating the numerous claims which Plaintiff has now abandoned within thirty (30) days of receipt of Defendant's invoices therefor.  In addition and also within thirty (30) days of receipt thereof from Defendant, Plaintiff's counsel is DIRECTED to pay all of defense counsel's reasonable expenses in traveling to and from Philadelphia to

Dallas, TX and/or Buffalo, NY to take the deposition of those individuals whom Plaintiff has identified as having the information sought by the defendant's Rule 30(b)(6) deposition notices.

IT IS FURTHER ORDERED that discovery is RE-OPENED for a period of forty-five (45) days to take these additional depositions only.

IT IS STILL FURTHER ORDERED that in the event Plaintiff's counsel has any objections to the invoices as submitted by Defendant, that he contact the undersigned's Deputy Clerk and arrange for the scheduling of a conference with the Court at such time as is mutually convenient for all concerned.

BY THE COURT:

s/J. Curtis Joyner
J. CURTIS JOYNER,          J.